## Schreiber v. Schreiber, Appellant.

Argued May 5, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Warren H. Van Kirk,* for appellant.

*Kivie Wolfe,* and with him *I. Edward Roth,* for appellee.

OPINION BY TREXLER, P. J., July 10, 1930:

The libel in this case charged that the respondent by cruel and barbarous conduct endangered the libellant's life and offered such indignities to his person as to render his condition intolerable and life burdensome. There were three alleged instances of actual physical abuse: respondent threw a plate which

grazed the libellant's head, knocking off his eye glasses; she struck him in the middle of his body with her knee; and she hit him on the mouth with her hand and cut his lip. The court very properly refused to consider these incidents, for there was not enough proof to support them. One witness stated that he saw sticking-plaster on libellant's lip, but that is hardly sufficient corroboration to support the allegation that the wife cut his lip. All of these occurrences were denied by the respondent. The lower court stated that if the libellant was as seriously hurt as he contends by her striking him, it is reasonable to suppose that he would have consulted a physician and would have had some corroboration. We can, as the lower court did, disregard the evidence of physical violence.

The court found that there were indignities to his person such as rendered his condition intolerable and life burdensome. The decision of the lower court in favor of the libellant is based on three grounds: (1) the respondent did not provide her husband with proper meals and at proper times and by reason of this neglect, he became nervous and thin; (2) she nagged him and called him names; and (3) on several occasions she came home drunk in the early morning accompanied by some persons in an automobile.

In support of these charges, his relatives were called to testify. A sister testified that the respondent said to her, "To Hell with him, he can go to his mother, I am not going to stay at home and cook for him." The libellant testified that there were frequent quarrels in which she abused him and called him names. He is to some extent corroborated in this respect by his relatives. There is but one other witness, an employe who worked for Schreiber in the garage, who said that they quarrelled several times. On one occasion when she asked him for money, he heard her call him "a nigger, a slave and a dummy."

The testimony as to Mrs. Schreiber coming home drunk was furnished entirely by his relatives. We are not impressed with the testimony of these witnesses. The identity of the people who were with Mrs. Schreiber was not disclosed, although the witnesses testified that they were close enough to smell her breath. It was singular in that these parties, without design, upon a number of occasions accidentally met Mrs. Schreiber at unusual hours in the morning. If they were watching for her, it is strange that they could not obtain any information as to who composed the party and did not follow up their detection of improper conduct on her part by more tangible proof. There seems to be little restraint to their narratives. For example, the sister of libellant testified that the dinner respondent prepared always consisted of a can of sardines and two rolls, and later on when another line of inquiry was pursued when asked, ''Did she have sufficient food,'' answered, 'I venture to say she would have sometimes more than I would have.'' Two of these witnesses testified that they were approached by Schreiber to testify on his behalf and were promised a reward for so doing.

A significant matter is that Schreiber accused Mrs. Schreiber of not wanting any children, but a doctor was called, an entirely disinterested witness, who testified that he performed an operation at the solicitation of Mrs. Schreiber in order that she might bear children.

We think the lower court should have applied the same rule to all the testimony as it did to certain of the testimony. We do not think there was sufficient proof to show that the libellant's condition was intolerable and his life burdensome. All through this terrible existence which he alleged he had, his wife went into the same social circle as his relatives; was at the same functions and there seems to be nothing abnormal in their relations. He worked for his father

who instead of paying him regular wages, seems to have given him credit at the grocery store. There is no doubt that this was galling to Mrs. Schreiber and her calling him names, if that proof is considered verity, seems to have been induced by the fact that she wished him to be his own boss and not dependent entirely upon his father. Most of the accusations of nagging and calling names are without specification as to time and place.

We are not prepared to say that even if we believed the witnesses of the libellant that he would be entitled to a divorce. Marriage is for better or worse. If the wife sleeps late in the morning and is remiss in her household duties, that is not in itself a ground for divorce. If she nags him, the nagging must be part of a course of conduct that with other aggravations becomes unbearable. Isolated instances are not enough. The surrounding circumstances must be considered. Doubt is thrown upon the testimony as to wild parties and late returns to the home in the hours of early morning, by the testimony of those who never heard any noise and would in all probability have been apprised of any such occurrences. Even if they actually occurred, they would not have been sufficient ground for granting a divorce.

The respondent denies all of these charges. Visitors to the house testified that the respondent was a good housekeeper. A neighbor who lived directly opposite on the same floor of the apartment where the Schreibers were and who by reason of having a sick baby who was easily disturbed, was alert to noises, testified to a number of incidents which are of a negative character, but which indicate that the Schreibers lived apparently the normal life of the ordinary dweller in flats. She describes Mrs. Schreiber as a good housekeeper, a kind neighbor, often tending to the witness's sick baby when she was compelled to absent herself in order to run

some errand. Schreiber several times invited her to eat with them which invitation she did not accept. She saw Mrs. Schreiber almost every day and never heard of any wild parties or disturbances of any kind. The janitress of the apartment never heard or saw anything wrong. It was her duty to report any thing that was unusual. The charges against the respondent were occurrences which took place when they lived on Jackson Street; later they moved to apartments over the garage which were owned by libellant's father. The maid employed there by the Schreibers testified that Mrs. Schreiber prepared the meals and Schreiber ate them and enjoyed them. She testified that on the day Schreiber left there was no food or money in the house; that Schreiber stopped the account with the grocer. There was no denial of this. His father and mother were there and she heard them tell Schreiber that if he continued to live with his wife, they wouldn't call him a son any more.

The libellant was a hard worker, often employed eighteen hours a day, returning to his home 12 or 1 o'clock at night. He claimed to have lost flesh in consequence of his marital troubles. There is no medical testimony corroborating this. We all agree that the divorce should not be granted. The decree of the lower court is reversed; appellee to pay the costs.