Fishel, Appellant, *v.* Fishel.

Argued June 8, 1970. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Jerome T. Foerster,* with him *William T. Smith,* and *Smith and Smith,* for appellant.

No oral argument was made nor brief submitted for appellee.

OPINION BY HOFFMAN, J., September 18, 1970:

This is an appeal from a dismissal of a husband's complaint in divorce alleging indignities. The defendant-wife has not contested the husband's action nor has she, either personally or by an attorney, appeared before the lower court or us.

The parties in this case were married in 1959. Three children were born of the marriage, all of whom have lived with the wife since she left the marital home on June 15, 1968. Since 1968, the wife has resided in Bedford County, Pennsylvania, while the husband has resided in Cumberland County, Pennsylvania.

The action was commenced on August 30, 1968. After the master's hearing, which the wife did not attend, the master filed a report recommending that the divorce be granted. In his report, he stated that the wife subjected the husband to a course of abusive conduct which began about two years following their marriage and which became steadily worse until their separation in 1968. During this period, she failed and neglected to prepare regular and proper meals for the plaintiff and seldom arose in the morning to prepare breakfast for him. She failed to perform her minimum duties in keeping house for the plaintiff and, on many occasions, it was necessary for the husband's mother to clean the house and do the laundry.

In addition, the wife continually associated with other men. On one occasion, she admitted to the hus-

band that she had become involved with a doctor by whom she was employed and had spent a weekend with him in New York City. While she was employed by this doctor, she also lent him $300.00, which sum was never repaid.

The master also accepted the husband's testimony that in May, 1968, he overheard his wife talking on the phone about having relations with other men, and that she stated that she was "making a lot of money on her back." It was also established that the wife "entertained" other men at home, in her husband's absence.

The master found this course of conduct to be such as to render the husband's condition intolerable and life burdensome.

The lower court, in reviewing the recommendation of the master, made no reference to the relationships between the wife and other men. Rather it made reference only to the fact that, notwithstanding the husband's testimony that the wife was grossly inadequate and unfit as a homemaker, he had not objected to her retaining custody of the three children at a distance of some 100 miles from the "supervising eye of the plaintiff-father". It viewed the husband's allowance of custody of the children to remain with the wife inconsistent with his claim that her slovenly conduct as a housekeeper affected his sensibilities. The lower court, therefore, ordered additional testimony to be taken for the purpose of delving into this alleged inconsistency.

A second hearing was held before the master. The wife again did not attend. The master found that after the separation of the parties, the wife had moved to Bedford County, Pennsylvania, where she and the three children were living with an uncle, a retired elderly person. The husband testified that, after inquiry, he had concluded that the children were being properly cared for and under much better supervision than before the separation of the parties, particularly in light of the

presence of the uncle. He further found that the husband was required to work at his place of employment from 8:00 a.m. until 5:00 p.m., and that his parents were elderly and unable to care for the children. He also found that the husband had been advised by his attorney that under the present circumstances, it would not be possible for him to obtain custody of these children. Plaintiff testified, however, that should conditions change and should he be in a position to assume custody of the children, he would ask for such custody. On the basis of these supplemental findings of facts, the master again recommended that the divorce be granted on the grounds of indignities.

The lower court, however, a second time, refused to agree with the master and instead dismissed the complaint. It determined that the plaintiff had stated nothing which overcame its prior objections and that his testimony as to the present condition of the children was hearsay and therefore, without probative value.

It is true that the lower court need not accept the findings of the master and can make its own determinations. We, too, however, are duty-bound to make an independent investigation of the evidence in order to determine whether it does establish a cause for divorce. *Nichols v. Nichols,* 207 Pa. Superior Ct. 220, 217 A. 2d 807 (1966).

The lower court, in its two opinions, made reference only to the fact that if plaintiff could allow his children to remain with his wife, he could not have been offended by her poor housekeeping to such a degree as to warrant the granting of a divorce. It should be clear, however, that these acts by a wife, while indicative of the nature of the relationship of the parties, would not in themselves, in any event, have been sufficient cause for a divorce. In *Breed v. Breed,* 73 Pa. Superior Ct. 9, 12 (1919), our Court said: "There is nothing in the statutes of Pennsylvania which im-

poses upon a young wife the penalty of being divorced because she is not a good cook, or laundress, or a careful housekeeper. . . ." In *Schreiber v. Schreiber*, 99 Pa. Superior Ct. 123, 126 (1930), we stated that "[m]arriage is for better or worse. If the wife sleeps late in the morning and is remiss in her household duties, that is not in itself a ground for a divorce." Thus, the lower court based its ruling concerning the husband's sensibilities and credibility solely upon acts and conduct which, in themselves, could not have justified a finding of indignities in any event. The lower court's opinions, however, do not mention the misconduct of the wife with other men which misconduct would serve as a sufficient basis to establish indignities.

We have carefully read the record, the master's report and the lower court's opinions and find that the husband's testimony was sufficient to warrant the granting of the divorce on the ground of indignities. The wife's relationships with other men were sufficient to create a condition which rendered the husband's condition intolerable and life burdensome. Whether the wife was a poor housekeeper and whether she was a good or poor mother, do not intrude upon the primary question as to whether her other actions rendered her guilty of indignities. Many a good parent, while evidencing love, affection, concern and care for her child, has acted in a contrary manner in dealing with her spouse.

Moreover, we find that the husband testified truthfully and forthrightly with respect to the reasons for allowing the children to remain with the wife. At no point, even before the issue was raised by the lower court, did he suggest that his wife was not a good mother. Finally, his attorney's advice that even adulterous activity on her part would not necessarily constitute sufficient ground for denying her custody of the children is well supported by case law. *Commonwealth*

*ex rel. Gervasio v. Gervasio,* 188 Pa. Superior Ct. 95, 145 A. 2d 732 (1958).

In short, the fact that the husband allowed his children to remain with the mother does not rebut his claim that she caused indignities sufficient to warrant the granting of the divorce. Nor does his allowing the children to remain in the custody of the mother, despite her poor housekeeping, and even in light of her adulterous activity, necessarily constitute a sufficient ground for an attack on his credibility.

In light of the above, therefore, we find that the opinion of the lower court dismissing the complaint was in error and should be reversed.

The decree of the court below is reversed, and the record is remitted with direction that a decree be entered by that court granting to the husband a divorce from the bonds of matrimony on the ground of indignities to the person.

WRIGHT, P. J., would affirm on the opinion of President Judge SHUGHART.