## Capo v. Capo

*John A. Miller*, for plaintiff.
*Gretchen S. Reed*, for defendant.

SAWYER, *P.J.*, January 12, 1984—This case comes before us on exceptions filed by both parties to the report and recommendations of the master appointed in this divorce proceeding. The complaint in divorce was filed on June 17, 1981 by plaintiff-husband. W. John Rackley was appointed a master to hear testimony and recommend to the court action with regard to the following:

1. the action of divorce
2. equitable distribution of the property
3. alimony
4. counsel fees

Following several days of hearing, the master submitted his report to the court which recommended

that the divorce be granted, that the marital assets be distributed 60 percent to plaintiff-husband and 40 percent to defendant-wife, that plaintiff pay $750 of defendant's counsel fees, and that plaintiff bear the costs of the proceedings. Both parties filed numerous exceptions to the master's findings and recommendations. Plaintiff's exceptions relate to the inclusion of various assets as marital property, the valuation of various assets, the master's finding of a reconcilliation in 1975 and subsequent final separation date for purposes of the equitable distribution, and the awarding of counsel fees and allocation of costs. Defendant's exceptions are all related to the distribution of the assets 60 percent to plaintiff and 40 percent to defendant. Having heard oral argument on the exceptions, we now review the findings and recommendations of the master.

At the outset, we note that our scope of review of the master's recommendations and findings is broad. Although the factual findings of the master are to be given the fullest consideration due to his actual observation of the demeanor of the witnesses, nevertheless those findings are advisory only. The court must still independently satisfy itself as to witness credibility and the appropriateness of the recommendations. Aloi v. Aloi, 290 Pa. Super. 125, 434 A.2d 161 (1981); Rollman v. Rollman, 280 Pa. Super. 344, 421 A.2d 755 (1980). Thus the court has the power to make its own factual determinations. Fishel v. Fishel, 217 Pa. Super. 171, 269 A.2d 372 (1970).

## DIVORCE

In the case before us, both husband and wife have executed affidavits of consent pursuant to §201(c) of the Pennsylvania Divorce Code of 1980, and the grounds for the divorce are that the mar-

riage is irretrievably broken. Because the residence requirements of §302 of the Divorce Code have been met, and because the consents have been filed, we are in accord with the master's recommendation that the divorce prayed for be granted.

## EQUITABLE DISTRIBUTION

The divorce issue having been resolved, we must address the issue of equitable distribution. Factors which the court should consider are enumerated in Section 401(d) of the Divorce Code and include:

(1). The length of the marriage.

(2). Any prior marriage of either party.

(3). The age, health station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4). The contribution by one party to the education, training, or increased earning power of the other party.

(5). The opportunity of each party for future acquisitions of capital assets and income.

(6). The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7). The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8). The value of the property set apart to each party.

(9). The standard of living of the parties established during the marriage.

(10). The economic circumstances of each party at the time the division of property is to become effective.

In the case before us, the parties have been married for 25 years. This was the first marriage for each of them. Plaintiff, aged 46, and defendant, aged 44, are both in good health at present, although in the mid-70's, defendant had been suffering from medical problems for which she underwent surgery. Apparently, she is once again in good health. Plaintiff, who has several years of college education, is employed as an antique furniture dealer and a real estate investor and salesman; he is part owner of the antique furniture store in which he works (Capo Furniture), and he is a partner in a company which purchases rental investment properties (Elm Lawn, Inc.). From both property owned and rented by Elm Lawn as well as property individually owned and rented by plaintiff, plaintiff has rental income. Defendant is employed as a sales clerk for K-Mart. Although she has three months business training and worked as a bookkeeper for Capo Furniture, she has never obtained formal training in bookkeeping which would make her skills much more marketable. She presently earns between $125 and $130 per week. For $9.90 per month, defendant is provided some health and accident insurance by her employer, but she will not be eligible for any retirement benefits unless she works at least seven more years for K-Mart. Neither party contributed to the education or training of the other. Considering plaintiff's present skills, personal and business contracts, and his present real estate and business holdings, he has a good opportunity for future acquisitions of capital assets and income; defendant, in comparison, has little opportunity for further acquisitions.

Although plaintiff provided the money with which all of the marital assets were acquired and has provided the funds to maintain them, defendant

has apparently provided all or nearly all of the home-maker services, providing for the domestic comfort and well being of plaintiff, and entertaining plaintiff's business associates. Defendant also has continuously lived with and cared for the parties' son (who is now 21) throughout his entire life. Through the contributions of both plaintiff and defendant, the parties were able to achieve a comfortable standard of living.

The economic circumstances of the parties is discussed in more detail below, but can be summarized as follows. Plaintiff has non-marital assets totalling $105,343, he has ownership interests in Capo Furniture and Elm Lawn, Inc., and other parcels of income producing real estate, and he is likely to acquire capital assets and income in the future. Defendant, on the other hand, has no non-marital assets, has a limited income of $125 to $130 net per week, and has, realistically, no opportunity for future acquisitions of capital or income. The marital assets to be equitably distributed total $332,320.

Before discussing how the marital estate shall be distributed, we first shall explain how we determine what was to be included in the marital estate and how both the marital and non-marital assets were valued.

Section 401(e) of the Divorce Code provides an extensive definition of "marital property". It includes all property acquired by either spouse during the marriage, regardless of how title is held. It also includes all property acquired during the marriage until the final separation. Because in the case before us the date of final separation is disputed and because only that property acquired prior to the final separation is marital property, we must first determine the date of final separation.

In the present case, plaintiff contends that the final separation occurred on April 3, 1972. The parties did separate on that date, plaintiff moving out of the marital residence to a cottage which the parties owned. However, defendant testified that from January to March of 1975 the parties reconciled and lived together in the marital residence as husband and wife. Plaintiff asserts that he returned to the marital residence solely to care for his son while defendant was ill. In a deposition taken for a support proceeding in 1977, however, plaintiff stated that he and defendant had reconciled in late 1974 and early 1975. Defendant testified that she was in the hospital in the fall of 1974 for tests to determine what was the problem with her kidney, but that she was not again in the hospital until the late summer of 1975. We agree with the master that defendant's testimony is more credible than plaintiff's on this issue of a reconcilliation in the winter of 1975. Thus, we too, adopt March 15, 1975 as the date of final separation.

Another issue which must be resolved before the property can be distributed is to determine to what extent certain mortgaged properties should be included in the marital estate. Section 401(e) of the Divorce Code provides that:

"Marital property" means all property acquired by either party during the marriage except:

(7). Property to the extent to which such property has been mortgaged or otherwise encumbered in good faith for value prior to the time proceedings for divorce are commenced.

In the instant case, two pieces of property acquired prior to the final separation (408 and 410 Fifteenth Street and 544 Twelfth Street, New Brighton), which therefore qualify as marital property, as

well as one lot owned by plaintiff, which is non-marital property, were subjected by plaintiff to a blanket mortgage in 1978 so that he could finance the purchase and construction of a lot and building which also are non-marital assets.* Simply stated, plaintiff used marital assets to acquire a non-marital asset. Plaintiff argues that the unpaid balance of the mortgage should be pro-rated among all the properties, and to the extent that the marital properties are mortgaged, they actually are non-marital property due to the provision of §401(e)(7) of the Divorce Code. Although we agree that this analysis is correct, we find it incomplete. To the extent that the marital properties are mortgaged thereby rendering the mortgaged value of the property non-marital, plaintiff has received the full benefit of the mortgaged value of the property which, in the absence of plaintiff's having mortgaged the property, would still be marital property. Therefore, as the master accurately stated on page ten of his report, "the pro-rata share of the mortgage attributable to the marital properties, i.e., $52,000, will be included in the marital estate and the Plaintiff will be charged with its receipt."

One other asset, whose inclusion as a marital asset is contested, is the insurance proceeds of $39,000 received by plaintiff in 1981 for the complete destruction by fire of the cottage located on the lot in Franklin Township. The lot and cottage, although titled in the name of Robert Capo only, were purchased in 1970, thereby making them marital

---

*The term "blanket mortgage" as used in this case refers to the single mortgage covering three pieces of real estate and buildings thereon obtained by plaintiff so as to enable him to finance the purchase of another lot and construction of a building thereon.

property. The fire insurance on the property was acquired by plaintiff in his name only and with himself as the sole beneficiary. He also paid the premiums from his own money. Therefore, he argues, the proceeds of the insurance contract are his alone and are not a marital asset. Defendant, however, argues that those proceeds represent the destroyed cottage which was a marital asset, and thus the insurance proceeds, too, are a marital asset.

In McDivitt v. Pymatuning Mutual Fire Insurance Co., 303 Pa. Super. 130, 449 A.2d 612 (1982), wherein a wife, separated from her husband but not divorced, obtained fire insurance on a piece of property held by both husband and wife as tenants by the entireties, the wife was named as sole beneficiary, and the wife purchased the insurance with her own money, the court held that the husband was not entitled to one half of the insurance proceeds. Plaintiff cites McDivitt as controlling in the case at bar. However, we find at least two distinctions between McDivitt and the instant case which renders McDivitt inapplicable. First, in McDivitt, the property which was insured was owned by both spouses as tenants by the entireties. In the case before us, the subject property was owned solely by plaintiff. Secondly, the action to recover 50 percent of the insurance proceeds in McDivitt was not a divorce action in which equitable distribution was sought; it was simply an intervention in a suit brought by the wife against the insurance company to obtain the proceeds. The husband and wife, although separated, were not divorced.

We find these two distinctions to be crucial. Because the lot and cottage were owned solely by plaintiff in the instant case, defendant had no legal or equitable interest in them. Consequently, she also had no insurable interest. An insurable interest

has been defined as an interest which can be enforced at law or in equity. 18 P.L.E. Insurance §53. At the time when plaintiff purchased the insurance, defendant had no interest in the lot or cottage which could be enforced, and therefore, could not have obtained insurance for the property. However, if the property had been held as tenants by the entireties, she would have had an insurable interest and, herself, could have obtained insurance on the property just as the husband himself could have obtained insurance in McDivitt. Defendant's present interest in the lot and cottage arises solely out of the Divorce Code which provides that for purposes of equitable distribution, that property titled in her husband's name alone which was acquired during the marriage is marital property of whose value she is entitled to a share. Thus, if defendant were claiming a share of the insurance proceeds from the lot and cottage in an action other than a divorce action, she should have no common law or statutory interest in them and thus would be entitled to nothing. However, where, as here, the only spouse who has an insurable interest in the property obtains insurance which results in his eventual receipt of insurance proceeds for the destruction of property which he alone owned but which under the Divorce Code is marital property because it was purchased while the parties were married, those proceeds too become marital assets subject to equitable distribution in a divorce action.

We recognize, however, that the insurance was purchased solely with funds of plaintiff after the parties had finally separated. To the extent that the insurance was purchased to protect a marital asset, and to the extent that both husband and wife received the full benefit of the insurance contract, i.e., the payment of the insurance proceeds, marital as-

sets should be construed to have purchased the insurance. Where it can be shown that the husband alone, after the final separation, paid the insurance premiums on marital property, and the insurance contract resulted in the payment of insurance proceeds by the insurance company to the husband when the marital property was destroyed by fire, the wife's pro-rata share. of the insurance premiums shall be deducted from her share of the insurance proceeds. But, as in the case before us, where there is no evidence of how much was paid by one spouse for the insurance premiums, we cannot determine the pro-rata share of insurance premiums to be deducted from the share of the other spouse. We, therefore, will simply divide the insurance proceeds in the equitable distribution without regard to the payment of premiums.

Having determined that the date of final separation is March 15, 1975, that plaintiff shall be treated as having already received $52,000 of the marital property in the blanket mortgage he obtained, and that in addition to the property agreed by the parties to be marital property, there shall be included the insurance proceeds from the lot and cottage, we now turn to the question of how the property shall be valued. This includes the issues of what value shall be assigned to each asset and the date as of which the property shall be valued.

The issue of what is the proper valuation date for equitable distribution has been addressed by at least three different courts. In Klug v. Klug, 130 Pittsburgh L.J. 73 (1981), it was held that the date of filing the divorce action is the valuation date. The holding was elaborated upon in Mele v. Mele, 66 Erie L.J. 27, at 28 (1982), in which the court stated that the increase in value between separation and

the filing of the divorce action is not marital property, "but may be considered in determining the relative positions of the spouse in possession or responsible for the increase and the other spouse, when the marital property is to be distributed." However, where natural economic circumstances, such as escalating inflation, causes the increase in value during separation, the valuation date should be the most recent one available so that both parties can benefit from the forces beyond their control. But if the increased value can be shown to be the direct result of only one spouse's efforts, then the date of separation should be used. Drake v. Drake, 111 Montg. L.R. 110 (1982). In the case before us, the increased value cannot be directly attributed to the efforts of plaintiff alone. Natural economic forces necessarily also played an important role in the property value's increase. Thus we are inclined to follow the rule in Drake and use the most recent figures available to be the value of the assets. In this regard, we agree with the master.

We are also in accord with the master as to what values should be used. Except for those properties which have recently been purchased in an arm's length transaction thereby establishing a fair market value, the tax assessment valuations are an appropriate measure of the fair market value of the properties. The parties agreed that the tax assessment records could be admitted into evidence and given whatever weight was appropriate, although the parties did not stipulate that the tax assessment records were in fact accurate or showed the true value of the property. Even considering, however, that the tax assessment records were not proven to be accurate, nevertheless, they were the only independent valuation of the real estate. Although plaintiff has had experience valuing real estate in Beaver

County and worked as an assessment hearing officer, plaintiff clearly has an interest in the value placed on the real estate involved in this case. Therefore, we find the recent arms length transactions and the tax assessment records to be more neutral and accurate indicators of the actual fair market value of the properties.

We also find that the master correctly assessed the value of the one third share of Elm Lawn, Inc. which is marital property. The most recent and accurate valuation of Elm Lawn would be the difference between the present value of the corporation's assets and the present value of the corporation's debts.

Based upon the foregoing discussion, we find the marital property as set forth by the master at pp. 3, 4, and 5 of his report to be correct:

1. Realty
    a. Marital residence              $75,800
       426 Fourth Avenue
       Patterson Heights, Pa.
       (less mortgage balance)          (880)
                                                      $74,920
    b. 38.7 acre farm
       South Beaver Twp., Pa.                         $22,000
    c. Duplexes
       408-410 Fifteenth St.
       New Brighton, Pa.             $70,800
    d. 544 Twelfth Avenue
       New Brighton, Pa.             26,900
       (less pro-rata share
       of blanket mortgage)          (52,000)
                                                      45,700
    e. Lot
       Franklin Twp., Pa.            4,500
       (less clean-up costs
       after fire)                   (3,800)
                                                        700
                                                    $143,320

2. Personalty
   a. 100 shares, Capo
      Furniture, Inc.                    $  3,000
   b. One-third interest,
      Elm Lawn                             50,000
   c. Household goods,
      antiques and
      furnishings                          45,000
                                                      $ 98,000
3. Value of marital assets diverted by
   plaintiff
   a. Insurance proceeds from
      destruction of building
      on lot in Franklin Twp.          $ 39,000
   b. Pro-rata share of blanket
      mortgage on duplexes
      and 1544 Twelfth
      Ave., New Brighton, Pa.            52,000
                                                      $ 91,000

      TOTAL VALUE OF MARITAL ESTATE      $332,320

Also based upon the foregoing discussion, we find the non-marital property as set forth by the master at pp. 14, 15 and 16 of his report to be correct:

## PLAINTIFF

1. Realty
   a. 1510 Eighth Avenue        $ 34,000
      Beaver Falls, Pa.
      (less mortgage balance)     (22,018)
                                              $11,982
   b. 1100 Eighth Avenue         153,000
      New Brighton, Pa.
      (less pro-rata share of
      blanket mortgage —
      $81,500)
      (less balance due to
      Leroy Stewart —
      $22,000)                  (103,500)
                                              $ 49,500

▬▬▬ ▬▬▬

| | | | |
|---|---|---:|---:|
| c. | 790 River Road<br>Beaver, Pa.<br>(less mortgage balance —<br>½ interest) | 190,000<br><br>(142,852) | |
| | | | 23,574 |
| d. | 1323 First Avenue<br>Beaver Falls, Pa.<br>(less mortgage balance) | 7,500<br><br>(1,000) | |
| | | | 6,500 |
| e. | 1511 Seventh Avenue<br>Beaver Falls, Pa.<br>(less balance due per<br>article of agreement) | 48,000<br><br><br>(18,000) | |
| | | | 30,000 |
| f. | 4 lots<br>3804 Fourth Avenue<br>Beaver Falls, Pa.<br>(less balance due per<br>article of agreement —<br>½ interest) | 28,900<br><br><br><br><br>(10,000) | |
| g. | Lot<br>Ocala, Florida | | 500 |
| h. | 1001 Ninth Avenue<br>New Brighton, Pa.<br>(less indebtedness<br>thereon — ½ interest) | 20,000<br><br><br>(20,000) | |
| | | | 00 |
| | | | $126,506 |

2. Personalty

| | | |
|---|---|---:|
| A. | Certificate of Deposit<br>Reeves Bank | $60,000 |
| b. | 200 Shares Reeves Bank | 12,000 |
| c. | IRA Account<br>Reeves Bank | 11,360 |
| d. | Boat | 3,500 |
| e. | 1977 Lincoln Continental | 5,200 |
| f. | One-sixth interest, Elm<br>Lawn, Inc. | 25,000 |
| | | $117,060 |

3. Less the value of marital assets
diverted by plaintiff                                    (91,000)

Total value of non-marital estate            $152,566

Plaintiff 's liabilities                                  (47,223)
NET VALUE OF NON-MARITAL ESTATE       $105,343

### DEFENDANT

1. Realty
   None                                                        00
2. Personalty
   a. 1975 Nova Coupe — value unknown            00
   TOTAL VALUE OF NON-MARITAL ESTATE        00

In considering how to distribute the above-listed marital assets, we begin by assuming that prior to separation both parties contributed equally to the marriage and acquisition of marital assets. See Paul W. v. Margaret W., et al., 130 Pittsburgh L.J. 6 (1982). Although it is not disputed that plaintiff provided the money for the couple's acquisitions, it is also undisputed that defendant alone contributed the services of a homemaker. Considering our discussion above with regard to the factors which are to be considered for an equitable distribution, we find nothing which would tip the scales more heavily in one direction than the other. Thus an equal 50/50 distribution would seem to be merited.

We are aware, however, that plaintiff has considerable non-marital assets while defendant has none. Nevertheless, we also recognize that we have valued the assets as of the most recent valuation available, and this valuation was to the advantage of defendant because since the final separation, the property values have undeniably increased. Some of the increase was due to natural economic conditions; yet some of the increase was also due to the

efforts of plaintiff and his real estate and business acumen. Being unable to determine the increased value attributable to each of these factors, we believe it was necessary to use the most recent valuation date. However, in ackowledgement of plaintiff's contribution to the increased value of the assets since separation, we are unwilling to give defendant more than 50 percent of the marital assets even though plaintiff has non-marital assets. Therefore, we make the following distribution of the marital estate, 50 percent to plaintiff-husband and 50 percent to defendant-wife:

TO PLAINTIFF:

| | | |
|---|---|---:|
| a. | Duplexes<br>408-410 Fifteenth Street<br>New Brighton, Pa. | $ 70,800 |
| b. | 544 Twelfth Street<br>New Brighton, Pa. | 26,900 |
| c. | 100 shares Capo Furniture | 3,000 |
| d. | One-half of the antiques and furnishings located at the marital residence | 22,500 |
| e. | One-third interest Elm Lawn, Inc. | 50,000 |
| f. | 50% of proceeds from insurance and sale of the Franklin Twp. lot [100% of proceeds already received by plaintiff; 50% ($19,850) to be paid by plaintiff to defendant] | 19,850 |
| | SUBTOTAL | $193,050 |

Less:

| | | |
|---|---|---:|
| g. | Amount by which the value of marital assets assigned to plaintiff exceeds 50% of the value of marital assets — to be paid by plaintiff to defendant | (26,890) |
| | TOTAL TO PLAINTIFF | $166,160 |

TO DEFENDANT:

| | | |
|---|---|---|
| a. The marital residence, 426 Fourth Avenue Patterson Heights, Pa. | | $ 74,920 |
| b. 38.7 acre farm in South Beaver Twp., Pa. | | 22,000 |
| c. One-half of the antiques and furnishings located at the marital residence | | 22,500 |
| d. Cash | | |
| 1. 50% of the proceeds from insurance and sale of Franklin Twp. lot | $19,850 | |
| 2. Amount by which the value of marital assets assigned to plaintiff exceeds 50% of the marital assets, to be paid by plaintiff to defendant | $26,890 | |
| Total | | $ 46,740 |
| TOTAL TO DEFENDANT | | $166,160 |

This distribution, although appearing to distribute more than is in the marital estate, contemplates plaintiff making a cash payment to defendant of $46,740 from his non-marital assets which include a $60,000 certificate of deposit which can be used to obtain the cash. By requiring plaintiff to pay defendant cash, plaintiff will be able to retain his business interests and his income-producing real estate. The cash distribution also includes the $19,850 representing defendant's 50 percent interest in the insurance proceeds on the cottage and proceeds from the sale of the lot in Franklin Township. One hundred percent of these proceeds were already received by plaintiff. Thus, the cash distribution to defendant equals her share of the insurance and sale proceeds on the Franklin Township lot ($19,850) plus the sum by which those marital assets assigned to plaintiff exceeds 50 percent of the marital assets ($26,890).

## COUNSEL FEES AND COSTS

Defendant has requested that counsel fees and costs be paid by plaintiff. The master recommended that such an allocation of expenses be granted. We agree. Section 502 of the Divorce Code gives the court the authority to allow reasonable counsel fees in certain circumstances. In the instant case, defendant's request for counsel fees was limited by the master to an award of $750. Defendant requested counsel fees only for the time her counsel was at the hearings required in this case. Based upon the size of the two volumes of transcripts and the fact that the hearings were held on three separate days, we find the master's statement that the hearings lasted approximately twelve hours to be reasonable. Based upon 12 hours of hearings, the counsel fees recommended by the master amounts to $62.50 per hour of courtroom time, which we do not find excessive.

Plaintiff would have us deny the request for counsel fees based upon the court's ruling in Holben v. Holben, 41 Beaver L. J. 200 (1983), that before a court can exercise it's discretion to grant an award of counsel fees the court must have before it evidence of the value of counsel's services, the results achieved by counsel, the time required to achieve it, the complexity of the case, and the hourly rate of counsel. We find that there is sufficient evidence before us for us to determine the reasonableness of the requested counsel fees. We know that defendant is requesting fees for only the time spent in hearings. From the record before us, we can make a fair estimate of that time. Having carefully considered the facts in this case and prepared this opinion, we are also fully cognizant of the issues involved, the results achieved by counsel and the efforts extended by counsel during that time period for which

counsel fees are sought. We are not asked to evaluate efforts and results and to guess time spent preparing this case for these hearings or possibly in negotiating settlements. Rather, we are asked to award counsel fees only for the time spent before the master, the entire proceedings of which have been fully transcribed and studied by us. Therefore, we do find ourself in a position to determine the reasonableness of the request. The record before us offers sufficient proof of the value of counsel's services during the hearings before the master. We also find that from the facts enumerated previously in this opinion, there is ample evidence of defendant's need and plaintiff's ability to pay. Therefore, an award of $750 for counsel fees is warranted. For the same reasons, we adopt the master's recommendation that plaintiff pay all costs.

For the foregoing reasons, we enter the following

## FINAL DECREE

And now, this January 12, 1984, upon consideration of the facts in the within case, the report of the master, and the exceptions to the master's report filed by both parties to the divorce action herein, we enter the following final decree:

1. We hereby order and decree that Robert J. Capo be divorced and separated from the nuptial ties and bonds of matrimony heretofore contracted between himself, the said Robert J. Capo, plaintiff, and the said Lillian K. Capo, defendant, on the grounds that the marriage between the parties is irretrievably broken and that each of the parties consents to a decree in divorce. Thereupon, all and every of the duties, rights and claims accruing to either the said plaintiff or the said defendant at any time heretofore in pursuance of said marriage shall

cease and determine and the said plaintiff and defendant shall be at liberty to marry again as if they had never been married.

2. The marital property shall be equitably distributed, each party receiving the value of 50 percent of the marital property as follows:

TO PLAINTIFF:

|   |   |
|---|---:|
| a. Duplexes 408-410 Fifteenth Street New Brighton, Pa. | $ 70,800 |
| b. 544 Twelfth Street New Brighton, Pa. | 26,900 |
| c. 100 shares Capo Furniture | 3,000 |
| d. One-half of the antiques and furnishings located at the marital residence | 22,500 |
| e. One-third interest Elm Lawn, Inc. | 50,000 |
| f. 50% of proceeds from insurance and sale of the Franklin Twp. lot [100% of proceeds already received by plaintiff; 50% ($19,850) to be paid by paintiff to defendant] | 19,850 |
| SUBTOTAL | $193,050 |

Less:

|   |   |
|---|---:|
| g. Amount by which the value of marital assets assigned to plaintiff exceeds 50% of the value of marital assets — to be paid by plaintiff to defendant | (26,980) |
| TOTAL TO PLAINTIFF | $166,160 |

TO DEFENDANT:

|   |   |
|---|---:|
| a. The marital residence, 426 Fourth Avenue Patterson Heights, Pa. | $ 74,920 |
| b. 38.7 acre farm in South Beaver Twp., Pa. | $ 22,000 |
| c. One-half of the antiques and furnishings located at the marital residence | 22,500 |

d. Cash
  1. 50% of the proceeds from insurance and sale of Franklin Twp. lot — $19,850
  2. Amount by which the value of marital assets assigned to plaintiff exceeds 50% of the marital assets, to be paid by plaintiff to defendant — $26,890

  Total — 46,740

TOTAL TO DEFENDANT — $166,160

3. Plaintiff is hereby directed to pay counsel fees of defendant in the amount of $750. Plaintiff is further directed to pay the costs of the suit as determined by the Prothonotary of Beaver County which shall include the costs of the master's proceedings.

4. Each of the parties is hereby directed to execute and deliver to the other all necessary papers, documents, titles, etc., necessary to carry out the distribution and assignment of the various assets referred to hereinabove.

The decree is final and, as provided in Pa.R.C.P. 1920.55, no exceptions may be taken hereto.